IN THE MATTER OF MARK VASSER,
AN ATTORNEY AT LAW.

Argued October 18, 1977—Decided February 2, 1978.

*Mr. L. Anthony Gibson* argued the cause for complainant Atlantic County Ethics Committee.

*Mr. Donald R. Conway* argued the cause for respondent.

PER CURIAM. This disciplinary proceeding against respondent is before the Court upon the presentment of the Atlantic County Ethics Committee (Ethics Committee), dated August 23, 1977. The proceedings originated upon a complaint filed with the Advisory Committee on Judicial Conduct (Advisory Committee) at its specific request on December 31, 1975. At that time respondent was a Judge of the Municipal Court of Margate City in Atlantic County. Since the subject matter of the seven-count complaint related to his conduct and activities in that judicial office, disciplinary proceedings were the proper concern of the Advisory Committee on Judicial Conduct. *R.* 2:15; *In re Holder,* 74 *N. J.*

581 (1977); *In re Yengo,* 72 *N. J.* 425 (1977); *In re Hardt,* 72 *N. J.* 160 (1977).

After the filing of this complaint respondent interposed an answer which created disputed issues. Thereafter a hearing was held and, on February 17, 1977, the Advisory Committee filed a presentment recommending that a complaint seeking appropriate discipline be issued pursuant to *N. J. S. A.* 2A:1B-1 *et seq.* Before any action was taken upon that presentment, however, it was learned that respondent no longer held his judicial office. Accordingly the case was referred to the Atlantic County Ethics Committee which, as noted previously, undertook proceedings resulting in its presentment to this Court. The record before the County Ethics Committee included the complaint and answer filed with the Advisory Committee on Judicial Conduct, the exhibits and transcript of the hearing before that Committee and its presentment and recommendation. Respondent and his counsel were notified that all evidential materials compiled by the Advisory Committee would constitute a part of the record before the Ethics Committee and were given the opportunity to appear, which they declined.

The Ethics Committee concluded that only the allegations of counts one, four and five of the complaint had been sustained and that with respect to those counts, "respondent's conduct was clearly unethical and unprofessional * * * while a judge and that his conduct was in violation of DR 8-101 (A)(2) and DR 9-101 (C) as an attorney." This determination coincided with the conclusions of the Advisory Committee. We concern ourselves therefore with these particular violations as alleged in the complaint to ascertain whether the record supports the determination of ethical breach and, if so, what discipline appropriately flows therefrom.

The first count of the complaint charged respondent with misconduct in office which was prejudicial to the administration of justice and brought judicial office into disrepute. With respect to this charge, the Advisory Committee found it to be "absolutely certain and a fact" that respondent

communicated his desire to the clerk of the Ventnor City Municipal Court that the trial of his client's assault and battery complaint "should be deferred and not processed in the ordinary course of municipal court business" and that in communicating this expectation, respondent told the court clerk "to 'bury it' or 'lose it' or, perhaps 'postpone the matter for a while until things cool off' or some such similar words." The Advisory Committee determined that respondent communicated improperly with the clerk "to prevent the matter from being disposed of by the Ventnor Municipal Court in a proper fashion" and that he did so because of his known office as municipal court judge in another municipality and his personal acquaintanceship with the clerk of the other municipal court. His reason for doing this, according to the Committee, was respondent's "perceived * * * strategic need to hold the assault and battery case open while [his] client had pending her divorce action against her then-husband and, thus, to be in a position to exert such pressure and leverage which might advance the interests of [his] client in the matrimonial litigation."

The Advisory Committee concluded that this conduct was a patent violation of *R.* 1:15–1(c), which proscribes the practice of law by a municipal court judge in any criminal matter. Even more pointedly, the Committee observed that respondent acted in a "surreptitious fashion" in that he "took pains to conceal from the judge [of the Ventnor City Municipal Court] * * * the result which he was seeking and, in fact, did obtain." The Committee stated that, wholly apart from the bar of *R.* 1:15–1(c) against rendering legal services in another municipal court, "the fashion in which respondent proceeded and brought about his desired ends was wholly inimical to the administration of justice."

We entertain not the slightest doubt that the Advisory Committee on Judicial Conduct, as the matter then stood before it, determined properly that respondent had clearly violated *R.* 1:15–1(c). While a judge of the municipal court, he engaged in the practice of law in a criminal matter when

he obtained a postponement of the trial of the disorderly persons complaint in another municipal court to give his client an advantage in an unrelated civil matter in connection with his private law practice. We also endorse the further conclusion of the Advisory Committee that, apart from the clear violation of *R.* 1:15–1(c), respondent's conduct was "wholly inimical to the administration of justice." In this respect his conduct offended Canons One and Two of the Code of Judicial Conduct which adjure a judge to "uphold the integrity and independence of the judiciary" and to "avoid impropriety and the appearance of impropriety in all his activities" in order "to promote public confidence in the integrity and impartiality of the judiciary."[1]

It follows inexorably that this conduct, which was grossly violative of minimal standards of judicial ethics, was, as determined by the Atlantic County Ethics Committee, contrary to the Disciplinary Rules of the Code of Professional Responsibility. We adopt without reservation the well-founded conclusion of the Ethics Committee in this respect.

Respondent's misconduct was not limited to Disciplinary Rules DR 8–101(A)(2) and DR 9–101(C). In his dual capacity as a judge and member of the bar, respondent clearly transgressed DR 1–102(A)(5) by engaging "in conduct that is prejudicial to the administration of justice." Respondent's postponement of the municipal court complaint also violated

[1]We also note that respondent's behavior cannot be squared with the broad ethical precept reflected in Canon 31 of the Canons of Judicial Ethics of the American Bar Association, which teaches that a judge of a court of limited jurisdiction, such as our municipal courts, who is permitted to practice law, is "in a position of great delicacy and must be scrupulously careful to avoid conduct in his practice whereby he utilizes or seems to utilize his judicial position to further his professional success." *Rules Governing The Courts of the State of New Jersey* (Rev. ed. 1973) 93. Though superseded by our current Code of Judicial Conduct, the essence of this Canon would be relevant to the conduct of a judge as a matter of fundamental decency and probity in the discharge of judicial responsibilities.

DR 7–102(A)(1), which forbids an attorney from delaying a trial when he believes that this would serve merely to harass another, and DR 7–105(A), which prohibits a lawyer from presenting, participating in presenting, or threatening to present — and, inferentially, delaying or continuing — "criminal charges to obtain an improper advantage in a civil matter."

As a member of the bar respondent, though a judge, was under concomitant professional strictures as firmly affixed as the obligations flowing directly from his judicial office. *In re Mattera*, 34 *N. J.* 259 (1961); see *In re Spitalnick*, 63 *N. J.* 429 (1973). In his capacity as an attorney he was under a solemn ethical duty to avoid the use of his judicial office to gain in another court any advantage on behalf of his private client. There is no escape from the conclusion that respondent was guilty of ethical misconduct.

In addition to the conduct which constituted the subject matter of the first count of the complaint, each Committee determined that respondent's actions described in counts four and five of the complaint also entailed ethical wrongdoing. The evidence considered by the Advisory Committee disclosed that respondent had used official court stationery with respect to a transaction relating solely to his private law practice. The Advisory Committee found that this was done to influence third parties improperly, although the precise purpose of this tactic was not made clear. It was the conclusion of the Advisory Committee that this conduct was "highly improper" and a violation of the Code of Judicial Conduct in that it constituted an attempt by respondent "to 'trade on' his judgeship in order to influence others in a matter in his private practice of law and wholly unrelated to his public duties." As stated by the Advisory Committee, respondent's actions were especially "distasteful" in that "he lent the prestige of his judicial office in an effort to advance the private interests of himself and others, and did so in a fashion which demeaned not only his own standing as a member of the Judiciary, but all other judges and the ends of the Ju-

diciary as well." See Canons One and Two of the Code of Judicial Conduct, *supra;* see also Canon 31 of the Canons of Judicial Ethics, *supra.*

The Ethics Committee concurred in the findings and determination of the Advisory Committee on Judicial Conduct with respect to the nature and tenor of respondent's conduct in using official court stationery as charged in counts four and five. It concluded that this conduct was unethical and contrary to the parallel standards of professional behavior applicable to respondent as an attorney, citing DR 8–101(A)(2) and DR 9–101(C). The ethical breaches, we add, were also violative of DR 2–102(A)(4) since they involved a misuse of letterhead and DR 1–102(A)(5) in that the conduct was "prejudicial to the administration of justice."

■ We thus sustain, again without hesitation, the determination of the Committees with respect to respondent's use of official court stationery. A judge who uses official court stationery in his law practice in effect employs his judicial office and title to further wholly private ends. He thereby traduces the judiciary and subverts the public interest in the impartial and fair administration of justice.

■ We conclude that respondent's ethical breaches warrant discipline. His ethical misconduct occurred while he held judicial office and was related to that office. If he were still a judge, respondent would be subject to a range of possible sanctions to be imposed by this Court pursuant to its constitutional, statutory and regulatory authority over the conduct and discipline of judges. *N. J. Const.* (1947), Art. VI, § VI, par. 4; *N. J. S. A.* 2A:1B–1 *et seq.; R.* 2:14; *R.* 2:15; *e. g., In re Hardt, supra* (removal); *In re Yengo, supra* (removal); *In re Conda,* 72 *N. J.* 229 (1977) (censure); *In re Holder, supra* (reprimand). At this critical juncture, when discipline is to be imposed, respondent stands before us only as a member of the bar. The Ethics Committee determined that respondent was guilty as an attorney for derelictions while holding judicial office; he is clearly accountable for this misconduct

in his professional capacity as a member of the bar. *In re Mattera, supra;* see *In re Hardt, supra; In re Spitalnick, supra.*

In certain circumstances, judges have been permitted to resign from office in the face of charges of ethical misconduct. *Report of the Supreme Court Advisory Committee on Judicial Conduct and Its Operations,* 100 *N. J. L. J.* 1181, 1190 (December 22, 1977); *e. g., In re Spitalnick, supra.* Where such a resignation is actuated by an official investigation into judicial misbehavior, it may itself be considered a factor bearing materially upon appropriate discipline. The record discloses, however, that respondent did not resign from office because of the charges confronting him. Rather, in December 1976, he advised the Mayor of Margate City that he did not seek to be reappointed because a municipal court judgeship would place inhibitions upon his law firm and his own private practice. In electing not to seek reappointment, therefore, respondent was not motivated by contrition or any notion of self-punishment for his misconduct. Hence, even were we to consider a decision not to seek reappointment to judicial office as tantamount to a resignation from office, in the circumstances of this case it is not a factor which should influence our deliberations as to discipline.

The touchstone of our disciplinary power is to fashion a sanction which fulfills our trust to the public and the profession, edifies the bar and is fair and just to the respondent. We note, in fairness to respondent, that the instances of proved misconduct did not assume egregious proportions. His improper intercession in the neighboring municipal court apparently did not result in any tangible or lasting distortion of justice. Respondent's unethical use of official stationery in connection with a private transaction did not, according to the evidence, result in demonstrable harm to others or unfair advantage over any third person. *Accord, In re Conti,* 75 *N. J.* 114 (1977).

These factors, however, cannot exonerate respondent or excuse his misconduct. In view of the character of respon-

dent's misdeeds as a lawyer and judge, we conclude that he should be suspended from the practice of law for a period of six months and until the further order of this Court.

It is so ordered.

*For suspension for six months*—Chief Justice HUGHES and Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER and HANDLER—6.

*Opposed*—None.

## ORDER

It is ORDERED that MARK VASSER of Northfield be suspended from the practice of law for six months and until further order of the Court, effective February 20, 1978; and it is further

ORDERED that MARK VASSER be and hereby is restrained and enjoined from practicing law during the period of his suspension; and it is further

ORDERED that respondent comply with all the regulations of the Supreme Court Governing Suspended, Disbarred and Resigned Attorneys.