OPINION OF THE COURT
 

 Per Curiam.
 

 The State Commission on Judicial Conduct has determined that petitioner, a Justice of the Supreme Court, should be removed for misconduct. The primary question is whether this sanction is appropriate for petitioner who is suffering from alcoholism and cancer and, as a result of his ill health, had submitted his resignation and applied for retirement prior to the commission’s recommended determination of removal. We agree that petitioner’s conduct cannot be condoned in a Judge and that he would be unfit to hold judicial office but have concluded that under the circumstances the public interest would be best served by reducing the sanction to censure, accepting his resignation, and permitting him to retire.
 

 In 1974 petitioner was elected as a Justice of the Supreme Court for the Fourth Judicial District. Prior to that he had served as Judge in the Schenectady City Court system. In May of 1975 petitioner had three encounters with the police. On the first two occasions (May 4 and 16) he was found asleep behind the wheel of his car apparently “under the influence of alcohol” and was driven home by the police. On the third occasion (May 22) he was arrested driving the wrong way on the Northway. On May 29, 1975 he pleaded guilty to driving while his ability was impaired in violation of subdivision 1 of section 1192 of the Vehicle and Traffic Law, a traffic infraction.
 

 Following these incidents petitioner was investigated by the State Commission on Judicial Conduct. As a result of that investigation petitioner was formally admonished for
 
 *389
 
 his drinking habits, pursuant to former subdivision 4 of section 43 of the Judiciary Law. In the letter of admonition dated November 10, 1977, it was noted that “a judge’s private life cannot be easily separated from his public life” and that the rules governing judicial conduct require a Judge to “conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary” (22 NYCRR 33.2). Petitioner accepted this admonishment without seeking further review.
 

 On January 16, 1979 petitioner was again arrested for driving while under the influence of alcohol. After having several drinks at a private club in midafternoon on that date, petitioner had driven home in an intoxicated condition. Not far from his home he passed out behind the wheel with the motor running and the car in gear. When he was taken into custody he was abusive to the arresting officer and asserted the prestige of his office. At the police station he threatened the police and demanded that they call various public officials including the District Attorney, while constantly reminding the police of his judicial position. He was beligerent and un-co-operative with the officer taking the breathalyzer test. The results shows that his blood alcohol content was .18%, well over the .10% needed to demonstrate intoxication (Vehicle and Traffic Law, § 1192, subd 2). He refused to submit to fingerprinting.
 

 On February 16, 1979 petitioner, through his attorney, pleaded guilty to driving with greater than .10% alcohol in his blood in violation of subdivision 2 of section 1192 of the Vehicle and Traffic Law, a misdemeanor. He was given a conditional discharge and was directed to attend an alcoholic rehabilitation program for a year. He was also instructed, through his attorney, to submit to fingerprinting.
 

 Petitioner joined the alcoholic program specified in the conditional discharge. He also enrolled in an extensive 28-day program at Rhinebeck. However, he did not submit to fingerprinting until August when the District Attorney arranged to have a police officer sent to his chambers to fingerprint him in private.
 

 In November, 1979 the State Commission on Judicial
 
 *390
 
 Conduct filed a complaint charging petitioner with “judicial misconduct”. In addition to the incidents noted above, the commission also charged petitioner with disregarding the 1977 admonition by continuing “until January 1979 to consume 2 or 3 alcoholic drinks in public on 2 or 3 nights per week and then drive a vehicle to his home.” In his answer petitioner essentially admitted the facts. With respect to his conduct while in custody in 1979 he stated that he was intoxicated at the time, had a poor recollection of the events, that the officers’ “recollections are probably better than mine” but that he lacked an intent to act improperly. He also, asserted various “affirmative defenses” including (1) a kind of double jeopardy defense with respect to the 1975 incidents for which he had previously been admonished and (2) a contention that his conduct was due to the disease of alcoholism.
 

 At the hearing petitioner admitted that he was an alcoholic and submitted uncontested expert proof that he suffered from that disease. The referee recommended that all of the charges be sustained and that the defenses be dismissed. The referee stated that alcoholism cannot provide “exemption from professional sanction for disgraceful conduct * * * A judge who is perceived to be out of control of his senses cannot be viewed confidently in his actions * * * what is the public to make of judgments of a judge known for impaired conduct as the result of drinking? Would an average citizen feel confident in putting his fate in the hands of a person of demonstrable instability.”
 

 Counsel for the commission then moved to have the commission confirm the referee’s report and the petitioner’s counsel moved to have it disaffirmed. Petitioner did not personally appear during oral argument before the commission. When his absence was noted by one of its members, his attorney explained that petitioner was undergoing cobalt treatments for cancer of the salivary glands.
 

 While the referee’s report was pending before the commission, petitioner submitted his resignation from the Bench and applied for retirement. He stated that ill health, resulting from the cancerous condition prevented him from properly performing his judicial duties. His applica
 
 *391
 
 tion for retirement was to be effective May 8, 1981. However before that date the commission determined that he should be removed for misconduct. By order dated May 1, 1981 the commission, with one member abstaining, concluded that “public confidence in [petitioner] is irretrievably lost and that the public interest can be protected only by removal of [petitioner] from office.”
 

 Petitioner has requested that we review that determination pursuant to the State Constitution and enabling statutes (NY Const, art VI, § 22, subd a; Judiciary Law, §44, subd 7). Under those provisions the scope of our review is broader than that traditionally assigned to an appellate court (see
 
 Matter of Spector v State Comm, on Judicial Conduct,
 
 47 NY2d 462, 465-466). We are not limited to considering alleged errors of law. Nor in considering the propriety of the sanction are we bound to treat the commission’s determination with the same deference due to other State agencies by considering it beyond our review unless found to be “ ‘shocking to one’s sense of fairness’ ” (e.g.,
 
 Matter of Pell v Board of Educ.,
 
 34 NY2d 222, 233). On the contrary, in matters involving the conduct and continued fitness of judicial officers the Constitution has conferred upon this court broad plenary power to determine the facts and appropriate sanction in the exercise of its own sound discretion and judgment (NY Const, art VI, § 22, subd d; Judiciary Law, § 44, subd 9; see, also,
 
 Matter of Dixon v State Comm, on Judicial Conduct,
 
 47 NY2d 523;
 
 Matter of Lonschein,
 
 50 NY2d 569;
 
 Matter of Rogers v State Comm, on Judicial Conduct,
 
 51 NY2d 224;
 
 Matter of Shilling,
 
 51 NY2d 397).
 

 Indeed, the Constitution expressly states that “the court of appeals may impose a less or more severe sanction prescribed by this section than the one determined by the commission, or impose no sanction” (NY Const, art VI, § 22, subd d). The implementing legislation of subdivision 7 of section 44 of the Judiciary Law then carefully reposes in this court alone the extraordinary power and sanction to remove or retire a judicial officer.
 

 In this case there is no basis for setting aside the com
 
 *392
 
 mission’s findings of fact, which for the most part were conceded. Nor did the commission err in considering the petitioner’s conduct throughout his Supreme Court career, including the 1977 admonition and the circumstances which prompted it. Even in criminal matters the repeat offender may be subject to stronger sanctions (see, e.g., Penal Law, § 70.10). Similarly, in determining whether a Judge’s conduct warrants discipline or renders him unfit to continue in office, the fact that a prior admonition for similar conduct proved ineffective, is a fact which may be taken into account
 
 (Matter of Kuehnel v State Comm, on Judicial Conduct,
 
 49 NY2d 465, 469-470).
 

 We also agree with the commission that the petitioner has demonstrated by his conduct that he is unfit to continue as a Judge. The fact that there is no evidence that his drinking directly interfered with thé performance of his duties on the Bench is not determinative. A Judge also has a higher obligation to insure that his conduct off the Bench does not undermine the integrity of the judiciary or public confidence in his character and judicial temperament
 
 (Matter of Kuehnel v State Comm, on Judicial Conduct, supra,
 
 p 469;
 
 Matter of Steinberg,
 
 51 NY2d 74;
 
 Matter of Shilling, supra).
 
 Here the petitioner’s public drinking and notorious involvements with the law over a span of several years, can only have resulted in irretrievable loss of public confidence in his ability to properly carry out his judicial responsibilities.
 

 However, we do not agree with the commission that the only solution is to remove the petitioner for misconduct. Although the Constitution provides for mandatory removal following conviction of certain types of offenses (NY Const, art VI, § 22, subds e, f; see, also, Judiciary Law, § 44, subd 8, pars [a], [b]), petitioner’s convictions do not fall into that category. Neither is removal for cause the only method for terminating the services of an unfit judicial officer in all cases.
 

 The commission “may determine that a judge be admonished, censured,
 
 removed or retired”
 
 (Judiciary Law, § 44, subd 7 [emphasis added]; see, also, NY Const, art VI, § 22,
 
 *393
 
 subd a). The sanctions available to this court also include “admontion, censure,
 
 removal or retirement
 
 for the reasons set forth in subdivision one” (Judiciary Law, § 44, subd 9 [emphasis added]; see, also, NY Const, art VI, § 22, subd d). Subdivision 1 in turn provides that the commission “may determine that a judge be admonished, censured,
 
 or removed from office for cause,
 
 including, but not limited to, misconduct-in office * * * and conduct, on or off the bench, prejudicial to the administration of justice, or that a. judge be
 
 retired for mental or physical disability
 
 preventing the proper performance of his judicial duties” (Judiciary Law, § 44, subd 1 [emphasis added] ; see, also, NY Const, art VI, § 22, subd a).
 

 Thus there are in fact two methods for terminating the services of an unfit Judge: (1) removal for cause when misconduct or other dereliction is concerned and (2) mandatory retirement when unfitness is due to mental or physical disability. When misconduct is the result of alcoholism, retirement for disability may be most appropriate in cases where discretion is called for.
 

 Admittedly alcoholism has had an irregular history in the law and the proper legal response is still subject to debate and adjustment. At common law in criminal cases, the use of alcohol was viewed by some as an aggravating circumstance (see 4 Blackstone, Commentaries, p 26; but also, see Perkins, Criminal Law, p 782). At the present time it is generally viewed as having the opposite effect of mitigating guilt, at least in cases where the crime charged requires proof of a specific intent which would be lacking in one who is intoxicated (see, e.g., Penal Law, § 15.25). Indeed it is now evident that the Constitution prohibits the punishment of one whose only offense is being an alcoholic (cf.
 
 Robinson v California,
 
 370 US 660; but see, also,
 
 Powell v Texas,
 
 392 US 514). The shift of course is not complete. There are still offenses, including recently enacted laws such as those dealing with the operation of motor vehicles, where the use of alcohol is an aggravating fact or element of the crime (e.g., Vehicle and Traffic Law, § 1192; Penal Law, § 240.40). Even those who advocate a general decriminalization of conduct caused by alcoholism recognize the need for this type
 
 *394
 
 of legislation (see, e.g., Grad, Goldberg and Shapiro, Alcoholism in the Law, p 195 [1971]).
 

 Apart from the criminal law the most recent development in this area has been the formal recognition by Congress and the Legislature of this State that alcoholism is an illness which must be treated as a public health problem (US Code, tit 42, § 4541, subd [a], par [6]; Mental Hygiene Law, § 1.03, subd 13). It has also been recognized as a type of disability (Mental Hygiene Law, § 1.03, subd 3; Disability Benefits-Alcoholism, Ann., 39 ALR Fed 182), and a potential basis for unfair discrimination which the Congress has sought to eliminate from Federal employment (US Code, tit 42, § 4561, subd [c]). However, even the Federal law does not preclude the discharge of one who is unable to perform his duties because of this handicap (US Code, tit 42, § 4561, subd [d]).
 

 Here the record amply supports the conclusion that petitioner was suffering from the illness of alcoholism. With the possible exception of the fingerprinting incident his misconduct may be seen as a manifestation of that illness. That, of course, provides no legal excuse for violating the law. But as far as the criminal law is concerned, petitioner has been convicted and a criminal punishment was imposed on him. And, as noted, these convictions do not require mandatory removal for cause. As far as the petitioner’s fitness for judicial office is concerned his alcoholism again can provide no basis for dispensation. However, there is no reason why his alcoholism may not be given consideration in determining the method for terminating his services when a less harsh alternative is available. Of course even forced retirement for mental or physical disability is embarrassing and a drastic measure to be employed against a sitting Judge. But it does at least permit him to retire without adverse legal consequences (NY Const, art VI, § 22, subd h).
 
 *
 

 In this case however, the complaint only charges the petitioner with misconduct. No effort was made to effect his retirement for mental or physical unfitness. There is no
 
 *395
 
 indication in the record why the complaint was so restrictively drafted. It appears that the possibility of mandatory retirement as an alternative to removal for cause, which was first mentioned by one of the members of the commission during oral argument, may have been simply overlooked at the time the complaint was drafted or perhaps it was felt to be unavailable because of petitioner’s involvements with the law. Whatever the reasons, however, and accepting the limitations of the complaint, this court is still not circumscribed to direct petitioner’s removal for cause as the only available option in view of his manifest unfitness for judicial office. We need not in the technical sense broaden the complaint and consider mandatory retirement because we can under all the circumstances achieve the same functional effect by censuring Justice Quinn and acknowledging his retirement.
 

 As noted it appears that petitioner is suffering from cancer as well as alcoholism and recognizing his inability to perform his judicial duties because of ill health, he tendered his resignation. Acceptance of the resignation by the appropriate authorities offers a satisfactory solution for the public and petitioner under the facts of this particular case. We recognize that one charged with misconduct may not generally avoid the consequences of removal for cause by racing to resign (Judiciary Law, § 47). However, that policy will not be undermined by giving effect to petitioner’s resignation in this case. Accordingly, the sanction should be reduced one level to censure; petitioner’s resignation is acknowledged and should be accorded whatever legal effect as is appropriate.
 

 Chief Judge Cooke and Judges Jasen, Gabrielli, Jones, Wachtler, Fuchsberg and Meyer concur in
 
 Per Curiam
 
 opinion.
 

 Determined sanction rejected, without costs, and the sanction of censure imposed.
 

 *
 

 In some cases the stronger sanction of removal may be necessary to insure permanent retirement from judicial office (NY Const, art VI, §22 subd h). In this case though we do not perceive any practical risk to that possibility.