In re Proceedings before the Commission on Judicial Tenure and Discipline Regarding John E. FUYAT, Former Associate Justice of the Family Court.

No. 90–184–M.P.

Supreme Court of Rhode Island.

Aug. 16, 1990.

Barry J. Kusinitz, Martin W. Aisenberg, Temkin & Miller, Ltd., Providence, for plaintiff.

Louis P. Aloise, Worcester, Mass., for defendant.

OPINION

WEISBERGER, Justice.

This case comes before us on a question certified to us by the Commission on Judicial Tenure and Discipline. This question reads as follows:

"Does the Commission on Judicial Tenure and Discipline have jurisdiction to conduct proceedings under G.L.1956 (1985 Reenactment) §§ 8–16–4 to 8–16–5, as amended, against a judge who has resigned prior to the Commission's issuance of Notice of Public Hearing under § 8–16–4(c), when the charges set forth in the Notice relate to conduct that occurred during the judge's judicial tenure?"

The facts of the case insofar as they may be pertinent to our answer to the foregoing question are as follows. In August of 1989 the Chief Justice of this court received a complaint concerning allegations that John E. Fuyat (Fuyat), then a justice of the Family Court, had engaged in a course of borrowing money from attorneys, some of whom were practitioners before the Family Court. The Chief Justice, with the cooperation of the Chief Judge of the Family Court, took steps to remove Fuyat from all judicial duties and assignments. Thereafter, on September 25, 1989, Fuyat submitted his resignation to the Governor of this State effective January 1, 1990. At a meeting that occurred November 19, 1989, the Commission on Judicial Tenure and Discipline (commission) voted to investigate allegations concerning Fuyat's conduct.

On February 12, 1990, the commission filed a notice of institution of formal proceedings and notice of public hearing. By this notice, the commission indicated its intention to hold a public hearing on the

charges to be brought against Fuyat. These charges might be summarized as alleging that he brought the judicial office into "serious disrepute" by soliciting substantial loans from attorneys, many of whom were engaged in practice before him.

Meanwhile, before Fuyat's resignation became effective, the office of the chief disciplinary counsel had begun an intensive investigation into Fuyat's alleged activities based upon a complaint filed with the chief disciplinary counsel on December 22, 1989. This investigation disclosed that Fuyat had borrowed substantial sums of money from attorneys, some of whom, though not all, had practiced before Fuyat in his capacity as a justice of the Family Court. The results of this investigation were set forth in a report filed with the disciplinary board appointed by this court to consider and to recommend appropriate sanctions for violation of disciplinary rules promulgated by the court.

After the filing of the report, a petition for disciplinary action was filed and notice thereof given to Fuyat. After answering the petition, Fuyat filed an affidavit with the disciplinary board on March 5, 1990. This affidavit in substance admitted the truth of the charges against Fuyat and consented to an order of disbarment. Pursuant to the consent to disbarment, this court entered an order disbarring Fuyat from the practice of law in this State on March 23, 1990. The order was accompanied by an opinion of this court in the case of *Carter v. Fuyat*, 571 A.2d 1126 (R.I. 1990). The opinion expressed our condemnation of Fuyat's acts and our unequivocal opinion that any such practices by a judicial officer have the effect of bringing discredit upon the officer and the entire judicial system. *Id.*

In light of the foregoing circumstances we are asked by the certified question to determine whether the commission has jurisdiction to conduct proceedings against Fuyat pursuant to G.L.1956 (1985 Reenactment) §§ 8–16–4 and 8–16–5, as amended by P.L.1987, ch. 492, § 1. Fuyat argues that we should answer the question in the negative because he believes that having resigned his judicial office, he is no longer subject to the disciplinary control that might be exercised by the commission. The commission argues that no person who holds judicial office should have the right to avoid the jurisdiction of the commission by resigning from such office. Cases from other jurisdictions have taken diverse views on this issue.

In Vermont the Supreme Court, for reasons set forth in a concurring opinion, held that a judge is no longer subject to judicial discipline after he leaves judicial office. *In re Feinberg*, 139 Vt. 511, 430 A.2d 1282 (1981) (Hill, J., concurring). A similar suggestion was made in dictum by the Supreme Court of New Jersey in *In the Matter of Vasser*, 75 N.J. 357, 382 A.2d 1114 (1978) (per curiam). The principles recognized in these cases have rested upon absence of jurisdiction and the doctrine of mootness. In other jurisdictions courts have held that since the judicial disciplinary body might recommend sanctions other than removal, the fact that a judicial officer no longer holds the position does not cause a disciplinary proceeding to become moot. *See, e.g., Kennick v. Commission on Judicial Performance*, 50 Cal.3d 297, 787 P.2d 591, 267 Cal.Rptr. 293 (1990); *In re Probert*, 411 Mich. 210, 308 N.W.2d 773 (1981); *Quinn v. State Commission on Judicial Conduct*, 54 N.Y. 2d 386, 430 N.E.2d 879, 446 N.Y.S.2d 3 (1981); *In re Peoples*, 296 N.C. 109, 250 S.E.2d 890 (1978), *cert. denied*, 442 U.S. 929, 99 S.Ct. 2859, 61 L.Ed.2d 297 (1979); *Judicial Inquiry and Review Board v. Snyder*, 514 Pa. 142, 523 A.2d 294 (1987); *Matter of Wharton*, 332 S.E.2d 650 (W. Va.1985); *Matter of Complaint Against Sterlinske*, 123 Wis. 2d 245, 365 N.W.2d 876 (1985) (per curiam).

■ An extensive analysis of the foregoing cases and the various rationales upon which they are based is unnecessary at this time. Suffice it to say that we are of the opinion that a judge or judicial officer who has removed himself or herself from judicial office by resignation is not by that fact immune from action by the commission, which may recommend some sanction other

than removal. In the case at bar, however, we are confronted with a situation in which Fuyat has not only been removed from judicial office but also been disbarred from the practice of law in this State. Further, as a condition precedent to his disbarment he in effect admitted the truth of (or his inability to defend himself against) numerous charges that had been brought against him in relation to the borrowing of money from attorneys. Since he has admitted these charges in a parallel proceeding, no useful purpose could be accomplished by again opening the charges to an evidentiary hearing before the commission.

■ Moreover, we must observe that many of these charges involved attorneys who loaned money to Fuyat. These attorneys are presently under investigation by disciplinary counsel and by the disciplinary board through counsel. Rule 42-21 of the Disciplinary Rules of this court provides in pertinent part as follows:

> "All proceedings involving allegations of misconduct by or incapacity of an attorney shall be kept confidential until and unless this court enters an order imposing some disciplinary sanction, except where the proceeding is predicated upon a conviction of the respondent-attorney for a crime."

Consequently a public hearing that might involve the identities of the attorneys under investigation would at this time be inappropriate and inconsistent with the provisions of Rule 42-21. Moreover, such a public hearing is unnecessary as well as violative of the rights of the attorneys who allegedly have loaned sums of money to Fuyat. Nevertheless, the commission may rely upon the admissions made in Fuyat's consent to disbarment in determining whether to recommend sanctions to this court, other than removal, which the commission may determine to be appropriate. The only hearing required (and this hearing may be public) will be a hearing at which Fuyat should be heard concerning the propriety and extent of the sanctions to be imposed upon him that may still be within the arsenal of remedies available to the commission and this court.

For the reasons stated, the question certified by the commission may be answered in the affirmative but subject to the limitations contained in this opinion.

MURRAY, Justice, concurring.

Although I agree with the majority's result, I write separately to emphasize the reasons that I believe that the Commission on Judicial Tenure and Discipline (commission) is not impotent in disciplining judges for their improper conduct as judges. Moreover, I do not believe that by simply resigning, a judge may evade the jurisdiction of the commission.

Under Rhode Island law the commission "shall make a preliminary investigation," upon receipt of a verified statement or sua sponte, whenever it is alleged in good faith that any judge "is guilty of a violation of the canons of judicial ethics." G.L.1956 (1985 Reenactment) § 8-16-4(b), as amended by P.L.1987, ch. 492, § 1. If the preliminary investigation discloses that a charge of judicial unfitness is supported by substantial evidence, the commission "shall direct that a public hearing thereon be held." Section 8-16-4(c). Section 8-16-5, as amended by P.L.1987, ch. 492, § 1 provides that the commission may then recommend that the Supreme Court censure, reprimand, suspend, or remove the judge from office. The remedies of censure or reprimand are still available even if a judge resigns.

This statutory scheme enables the commission to regulate the conduct of judges. The regulation of judges is necessary to ensure that judges behave properly and to preserve the public's confidence in the judiciary. The public's confidence in the judiciary and the commission would be shaken if the system for the regulation of the conduct of the judiciary could be frustrated simply by the resignation of the judge under investigation. Hence I do not believe that the Legislature intended to allow the frustration of the statutory scheme by denying the commission's jurisdiction over a judge who has resigned.

This statutory interpretation is necessary to ensure that the commission operates fairly and effectively. We want the com-

mission to have an opportunity to discover facts before proceeding to a public hearing. If a judge could resign as soon as he or she becomes aware that a preliminary investigation is under way, then the commission would be forced to act hastily. If the commission is forced to act hastily, then the commission is deprived of the opportunity to thoroughly investigate before making a recommendation to the Supreme Court.

I therefore believe that the commission has jurisdiction.