OPINION OF THE COURT
 

 Per Curiam.
 

 Petitioner, a Justice of Shandaken Town Court, Ulster
 
 *493
 
 County, seeks review of a determination by the State Commission on Judicial Conduct that he should be removed from office
 
 (see,
 
 NY Const, art VI, § 22 [a]; Judiciary Law § 44 [7]). Of the four charges in the formal complaint, the Commission sustained two: one relating to petitioner’s mishandling of court funds (Charge I), the other imposing discipline for petitioner’s failure to recuse himself (or disclose the relevant facts) in several cases involving a litigant from whom petitioner had once borrowed several hundred dollars (Charge III).
 
 [1]
 

 In the exercise of our plenary review powers
 
 (see, Matter of Quinn v State Commn. on Judicial Conduct,
 
 54 NY2d 386, 391), we find the following facts. After an evening court session on November 28, 1989, petitioner’s court clerk prepared an envelope for deposit in petitioner’s official bank account
 
 (see,
 
 22 NYCRR 214.9 [a]). The envelope contained $1,173 in fines and surcharges collected, either by mail or in court that evening, from 16 individuals. Four hundred fifty-four dollars was cash, the remainder checks and money orders.
 

 Deposits were ordinarily made by the clerk, but petitioner himself on occasion attended to the transaction and offered to make the November 28 deposit.
 
 [2]
 
 In late December or January 1990 a bank officer advised the court clerk that there were insufficient funds in petitioner’s account to cover a check written to the State Comptroller for November’s receipts. It was then that the clerk learned that the November 28 deposit had not been made.
 

 When the clerk asked petitioner what became of the money, he said he might have left it in one of his suit pockets and would look for it. In the ensuing weeks, the clerk repeatedly queried petitioner about the missing funds and petitioner responded that he was still checking. Petitioner, however,
 
 *494
 
 made no official report of the missing deposit, explaining at the hearing that he was embarrassed the money was missing and was hoping it would turn up.
 

 In September 1990 an independent accountant who performed the annual audit of the town’s finances reported to the Shandaken Town Board that there was a deficiency in petitioner’s official bank account because a deposit had not been made. At a Board meeting, petitioner said that he might have put the envelope in the trunk of his Oldsmobile, which he gave away in or about March 1990. In December 1990 petitioner gave similar explanations to the accountant, his fellow Town Justice and others. The car’s new owner, however, when finally contacted by petitioner, could not locate the money.
 

 In February 1991 (after the Commission had initiated an inquiry) petitioner had letters sent to the individuals who in November 1989 paid by check or money order. Only one individual submitted a new payment of $117. Later in 1991, petitioner suggested to his fellow Justice that the deposit may have become lost in some files.
 

 Although circumstantial evidence had been presented suggesting the possibility that petitioner converted the money to his own use, neither the Hearing Officer nor the Commission made such a definitive finding, each concluding that petitioner’s failure to make the deposit resulted from either "carelessness or calculation.” The Commission nevertheless sustained the charge, stating that the mishandling of public money by a Judge is "serious misconduct” even when not done for personal profit.
 

 We agree. As this Court has noted, "carelessness in handling public moneys is a serious violation of [a Judge’s] official responsibilities”
 
 (Matter of Petrie v State Commn. on Judicial Conduct,
 
 54 NY2d 807, 808). Such breaches of public trust have frequently led to removal
 
 (see, Matter of Vincent,
 
 70 NY2d 208, 209;
 
 Matter of Rater,
 
 69 NY2d 208, 209;
 
 Matter of Petrie, supra; Matter of Cooley,
 
 53 NY2d 64, 66).
 

 Had petitioner taken immediate remedial steps, a lesser sanction might be warranted for a first transgression. In the present case, however, petitioner’s attitude for an extended period was, at best, one of relative indifference. For almost a year he made no official notification of the missing money— the Referee concluded this "smack[ed] of concealment” — and he did not contact the debtors until the Commission intervened, almost 15 months after the deposit should have been
 
 *495
 
 made. Nor has petitioner provided an adequate explanation for the loss of the money. These are aggravating circumstances warranting removal
 
 (see, Matter of Rater,
 
 69 NY2d, at 209).
 

 We similarly sustain Charge III, which alleged that petitioner created the "appearance of partiality” by not recusing himself, or disclosing the relevant facts, in a number of cases adjudicated in 1988 and 1989 involving an acquaintance from whom defendant had previously borrowed about $500. The money was borrowed between 1983 and 1986 from the owner of a diner petitioner patronized, and repaid within a few days.
 

 Petitioner testified that at the time of the adjudications he did not recall the loan, and would have disqualified himself had he been aware that he had borrowed the money. The Hearing Officer and Commission found incredible petitioner’s claim of having forgotten about the loan, given petitioner’s relationship with the lender, the amount of money involved, and his varying positions on the issue throughout the proceedings.
 

 The Code of Judicial Conduct requires a Judge’s recusal when his or her "impartiality might reasonably be questioned” (22 NYCRR 100.3 [c] [1]). Absent a legal disqualification, however
 
 (see, e.g,
 
 Judiciary Law § 14), a Judge is generally the sole arbiter of recusal
 
 (People v Moreno,
 
 70 NY2d 403, 405;
 
 see also, People v Smith,
 
 63 NY2d 41, 68 [noting that recusal is generally "a matter of personal conscience”]). Accordingly, while Judges should strive to avoid even the appearance of partiality, and the "better practice” would be to err on the side of recusal in close cases
 
 (see, Corradino v Corradino,
 
 48 NY2d 894, 895), formal charges of misconduct are inappropriate when the circumstances fall in that vast discretionary area over which reasonable Judges can differ
 
 (compare, Matter of Wait,
 
 67 NY2d 15, 18 [Judge presided over cases involving family members];
 
 Matter of Myers,
 
 67 NY2d 550, 554 [Judge attempted to preside over case in which he and family members had a personal interest];
 
 Matter of Scacchetti v State Commn. on Judicial Conduct,
 
 56 NY2d 980 [Judge presided over case involving close friend while a loan was still outstanding]).
 

 This case, however, does not involve review of a Judge’s discretionary determination that the circumstances did not warrant recusal. Petitioner testified that the reason he did not
 
 *496
 
 disqualify himself or disclose the relevant facts to the parties is that he simply did not remember the loan. Like the two previous bodies that have reviewed this case, we too find that assertion unworthy of belief. In these circumstances, therefore, the Commission properly sustained Charge III.
 

 Accordingly, the determined sanction should be accepted, without costs, and petitioner removed from the office of Justice of the Shandaken Town Court.
 

 Chief Judge Kaye and Judges Simons, Titone, Hancock, Jr., Bellacosa, Smith and Levine concur in Per Curiam opinion.
 

 Determined sanction accepted, without costs, etc.
 

 [1]
 

 . Charges II and IV, relating respectively to alleged improprieties in connection with travel expenses, and lack of candor during the staff investigation, were dismissed by the Commission and are not before us.
 

 [2]
 

 . Although at the hearing 2 Vi years later the clerk testified that she did not have a specific recollection of giving the envelope to petitioner, and the Judge asserted a similar lack of recollection, the Hearing Officer and the Commission concluded, and we agree, that petitioner must have taken custody of the envelope. As the events unfolded, and the money’s disappearance became evident, petitioner did not deny taking the envelope or suggest that the clerk was at fault. Instead, petitioner offered various explanations of what he may have done with the money.