IN the MATTER OF JUDICIAL DISCIPLINARY PROCEEDINGS AGAINST the Honorable Jerold W. BREITENBACH, Circuit Judge, Kenosha County.

Supreme Court

*No. 90-1896-J. Filed April 2, 1992.*

(Also reported in 482 N.W.2d 52.)

PER CURIAM. *Judicial disciplinary proceeding; former judge suspended from exercising powers and duties of judge.*

This is a review, pursuant to sec. 757.91, Stats., of the findings of fact, conclusions of law and recommendation of the judicial conduct panel that Jerold W. Breitenbach be prohibited from exercising the powers and duties of a judge for a period of two years as discipline for judicial misconduct. The panel concluded that Judge

Breitenbach wilfully and on an aggravated and persistent basis violated six of the standards set forth in the Code of Judicial Ethics by his conduct in the courtroom and his statements made during the course of proceedings before him as circuit judge for Kenosha county.

We adopt the panel's findings of fact and conclusions of law and determine that the recommended two-year prohibition of Judge Breitenbach's exercise of the powers and duties of a judge is appropriate discipline to be imposed for his judicial misconduct. We order that prohibition effective August 1, 1991, the date Judge Breitenbach no longer held the office of circuit judge for Kenosha county. Thus, Judge Breitenbach is prohibited from exercising the powers and duties of a judge, whether of the circuit court or of a municipal court, including service as a reserve judge, for the prescribed period.

This proceeding commenced August 21, 1990 upon the filing by the Judicial Commission of a complaint alleging that Judge Breitenbach had engaged in judicial misconduct. When the complaint was filed, Judge Breitenbach occupied the office of circuit judge for Kenosha county, which position he continued to hold through July 31, 1991, when his term expired. Judge Breitenbach did not seek reelection to that office but thereafter remained eligible but has not been assigned to serve as reserve judge in the circuit court.

In the course of this proceeding, Judge Breitenbach entered into a stipulation with counsel for the Judicial Commission on April 1, 1991, in which he admitted having engaged in the following conduct. On at least two occasions, he went armed in court with a concealed and loaded revolver and on two occasions placed that revolver in the wastebasket near the bench in his courtroom and forgot he had done so, with the result that on

105

each occasion the revolver was discovered by maintenance staff. Further, during the course of 14 proceedings between 1985 and 1990, Judge Breitenbach engaged in courtroom behavior that was loud, angry, impatient, discourteous, intemperate or lacking in dignity or decorum. Judge Breitenbach stipulated that his conduct constituted an aggravated and persistent failure to comply with six standards to which judges are held by the Code of Judicial Ethics and, consequently, engaged in "misconduct" as that term is used in sec. 757.81(4), Stats. In the stipulation, he agreed not to exercise any of the powers or duties of a judge for two years, commencing upon the expiration of his then current term.

The Judicial Commission and Judge Breitenbach asked the judicial conduct panel to recommend to this court that the stipulation be approved and accepted and that the disciplinary proceeding be dismissed without prejudice, subject to the Commission's right to refile its complaint if Judge Breitenbach did not comply with the terms of the stipulation. The panel then filed a report recommending that the stipulation of the parties concerning the judge's conduct and the proposed disposition of the proceeding be accepted. However, the panel explicitly made no recommendation that the court accept the parties' stipulation for the dismissal of this proceeding with prejudice.

After reviewing the panel's recommendation, the court remanded the matter to the panel for findings of fact, conclusions of law and a recommendation for discipline or other disposition of the proceeding. Thereafter, on August 16, 1991, the Judicial Commission filed a stipulation of voluntary dismissal of this proceeding, pursuant to sec. 805.04(1), Stats.[1] Judge Breitenbach

---

[1]Section 805.04, Stats. provides:

joined in that stipulation, repeating his admissions of misconduct set forth in the prior stipulation and again agreeing not to exercise any of the powers or duties of a judge for two years, commencing August 1, 1991.

In its order of October 22, 1991 the court held that sec. 805.04(1), Stats., did not apply under the circumstances present and, consequently, the Judicial Commission's notice of voluntary dismissal did not dismiss the proceeding.[2] Consequently, the court remanded the matter to the panel for findings of fact, conclusions of law and a recommendation concerning discipline or other disposition. In its order, the court stated that if the stipulations of the parties concerning Judge Breitenbach's misconduct were not withdrawn, the panel's findings and conclusions could be based thereon and that its recommendation for discipline could, but need not, be consistent with the parties' stipulations.

In its report filed March 3, 1992 the panel reported that the Judicial Commission and Judge Breitenbach had responded in writing that they did not withdraw from their prior stipulations. The panel made findings of fact and conclusions of law accordingly. In addition to having carried a loaded, concealed revolver into his courtroom, placed it in the wastebasket near his bench and inadvertently left it there for maintenance staff to

---

**Voluntary dismissal: effect thereof. (1) By plaintiff; by stipulation.** An action may be dismissed by the plaintiff without order of court by serving and filing a notice of dismissal at any time before service by an adverse party of responsive pleading or motion or by the filing of a stipulation of dismissal signed by all parties who have appeared in the action. Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is not on the merits, except that a notice of dismissal operates as an adjudication on the merits when filed by a plaintiff who has once dismissed in any court an action based on or including the same claim.

[2]For the guidance of the Judicial Commission and members of the judiciary, we append a copy of that order to this opinion.

find, Judge Breitenbach stipulated to and the panel found the following conduct:

(1)    During the course of a jury trial in February, 1990, while in chambers and in the presence of two attorneys appearing in that action, Judge Breitenbach became angry and upset and yelled at one of the attorneys, ordering him to bring his client's claims adjuster to the courtroom and refusing to continue the trial until the adjuster was present. He threatened the attorney with contempt for refusing to obey his order and forced the parties to settle the action by his statements, demeanor and orders.

(2)    In February, 1989, during a jury trial, after dismissing the jury and properly admonishing both counsel for comments they had made in the presence of the jury, Judge Breitenbach became visibly angry and upset and loudly, intemperately and repeatedly interrupted the prosecutor's attempt to make an offer of proof, threatened to hold him in contempt for persisting in his efforts to do so and characterized a portion of the offer of proof as "stupid . . . [plain] stupid."

(3)    In November, 1989, during a hearing in a juvenile matter, after the juvenile's attorney objected to the court's imposing sanctions without the attorney having been given notice of the nature of the allegations and the possibility that sanctions might be imposed, Judge Breitenbach said:

> But [the attorney's] talking about she doesn't have notice of these things, you see. We have to put it up on the marquee of a school or some place that A. violated and that's why he's coming back here like he doesn't know that, you see. And maybe [the attorney] has some witnesses that are going to say A. has been present every day in school, that A. hasn't been disruptive in school, so maybe . . . that maybe you can

108

find those. Maybe there are people like that that can say that.

While Judge Breitenbach was addressing the juvenile, the following colloquy occurred:

> THE COURT: You can have any kind of hearing you want on it, but if it's found out that you have violated any rule of the school, any rule, it's ten days. You give a teacher the finger, any and you'll do ten days, and I hope they make you do it standing on your head up there. Have you been to jail before?
>
> JUVENILE: No.
>
> THE COURT: Well, you'll like it up there. You'll like it a lot.
>
> [ASSISTANT PRINCIPAL]: May I ask what our role is in this? Do we call the (Department of Social Services) if there is a violation?
>
> THE COURT: Yes, or send me a note or send it to me at 912-56th Street any time that he has a violation from now on. That means I don't care if they put you in suspension there, but you're coming back here and when that note comes to me [your lawyer] is going to get it within an hour from a bailiff and you're going to be in here because the police are going to

come out to that school and
pick you up right by your hair.
You understand that?

(4)   In November, 1987, during a motion hearing, Judge Breitenbach became visibly angry, upset, loud and intemperate toward the assistant district attorney, repeatedly ordering him to bring the district attorney before him and threatening the assistant district attorney with contempt. He held the assistant district attorney in contempt for not obeying his order to bring the district attorney to him.

(5)   In December, 1987, during a hearing and after an attorney filed a request for substitution of judge, which resulted in an adjournment of the probable cause hearing and her client's remaining confined in a psychiatric ward, Judge Breitenbach stated, "You know, sometimes attorneys make their clients in a worse mess. You do what you have to do."

(6)   For three days during a jury trial in June, 1988, Judge Breitenbach was impatient and intemperate in his manner and comments toward a defendant's attorney, which resulted in an appearance of partiality and interference with that attorney's presentation of his client's defense.

(7)   In the course of a jury trial in June, 1988 and out of the presence of the jury and after holding defense counsel in summary contempt for being late, Judge Breitenbach ordered that attorney to report himself to the Board of Attorneys Professional Responsibility for professional misconduct on account of his tardiness.

(8)   During a jury trial in June, 1988, after the direct and cross-examination of the defendant and in the presence of the jury, Judge Breitenbach conducted a lengthy examination of the defendant, impeaching him with a prior inconsistent statement made to the police at

the time of his arrest. That prior statement and its inconsistency with the defendant's testimony at trial had not been explored by either the prosecutor or the defendant's counsel prior to the judge's examination.

(9) During a jury trial in March, 1989, after completion of the direct and cross-examination of the juvenile defendant, Judge Breitenbach conducted a lengthy examination of the defendant, suggesting that the defendant and an accomplice were affiliated with a gang. The judge's manner during questioning gave the appearance of disbelief and disdain toward the juvenile's responses. The issue of possible gang affiliation had not been raised on direct or cross-examination by either the prosecutor or the defendant's attorney.

(10) In September, 1986, after the conclusion of testimony in a criminal trial and upon motion of the defendant's attorney, Judge Breitenbach declared he was dismissing charges against the defendant because the State had failed to introduce sufficient evidence regarding the second element of the offense to support a guilty verdict. Both the prosecutor and defense counsel were given an opportunity to argue and make a record before the judge ruled that the case was dismissed.

During the lunch hour, the prosecutor decided he wanted to supplement the record and ask Judge Breitenbach to reconsider his dismissal ruling. The prosecutor wanted to do so before the judge dismissed the jury because, once the jury was dismissed, the judge could not reconsider his ruling.

Accordingly, the prosecutor went to Judge Breitenbach's court to ask the judge not to release the jury, to have the defendant's attorney brought back to court and to reconsider the ruling and allow him to supplement the record. Upon arriving at the court, the prosecutor called the defendant's attorney, leaving a message asking him

111

to return to court. Just before the case was called at 1:00 p.m., the judge told the prosecutor that he would not be allowed to supplement the record. Before defense counsel arrived, the judge took the bench and the prosecutor again asked to be allowed to supplement the record and asked that the jury not be brought into court and released. Judge Breitenbach refused to allow him to make a further record and instructed the court reporter not to record the judge's comments to the jury or his release of the jury.

As the jury was brought in, Judge Breitenbach became angry and upset and yelled at the prosecutor to sit down and be quiet. He informed the jury that the case had been dismissed and the reason for its dismissal and released the jury.

After the jury was released, the prosecutor asked the bailiff and court reporter to provide affidavits about what had occurred, whereupon Judge Breitenbach yelled at him to leave the courtroom or he would go to jail. The prosecutor left. The judge then ordered an assistant district attorney who was present throughout this occurrence to report the prosecutor to the Board of Attorneys Professional Responsibility for unprofessional conduct in attempting to make a record outside of the presence of opposing counsel.

(11) During a jury trial in April, 1986, in the presence of the jury, Judge Breitenbach stated to the assistant district attorney prosecuting the case, "Asking [the witness] many absurd questions is not going to get to the truth of the matter." The judge was loud, intemperate, impatient and rude to the prosecutor and prevented him from making a record in support of the State's position.

(12) In July, 1986, at the conclusion of a preliminary hearing in a criminal matter, Judge Breitenbach was intemperate and discourteous in his remarks to the

assistant district attorney and prevented him from making a record in support of the State's position.

(13) In a criminal matter in December, 1985, Judge Breitenbach was intemperate and discourteous toward the prosecutor and limited his attempt to make a record in support of the State's position.

(14) At a motion hearing in a criminal matter in August, 1985, Judge Breitenbach was intemperate, impatient and discourteous toward the prosecutor and refused to allow him to make a record in support of the State's position.

The judicial conduct panel concluded that Judge Breitenbach's conduct described in these enumerated instances violated the following standards of judicial conduct set forth in SCR 60.01:

(1) A judge should be mindful that ours is a government of law and not of men and should not permit his or her personal concept of justice to override the law. A judge should administer his or her office with due regard to the integrity of the system of law itself, remembering that he or she is not a repository of arbitrary power but a judge under the sanction of law.

(3) A judge should be temperate, attentive, patient, industrious and, above all, impartial. A judge should administer the law free of partiality and the appearance of partiality . . ..

(6) A judge should be considerate and courteous to litigants, jurors, witnesses, attorneys and all in attendance upon the court. A judge should require similar conduct on the part of clerks, court officials and counsel. He or she should conduct all judicial proceedings so as to reflect the importance and seriousness of the inquiry to ascertain the truth.

(9) A judge should conduct the work of his or her court with dignity and decorum and without interference

which might detract from the proper courtroom atmosphere. A judge should so act during trials and hearings that his or her attitude, manner or tone toward counsel or witnesses will not prevent the proper presentation of the cause or the ascertainment of the truth. A judge may properly intervene if he or she considers it necessary to clarify a point or expedite the proceedings. He or she should not make an unnecessary display of learning, express a premature judgment or add to the embarrassment or timidity of witnesses or counsel.

(11) A judge should grant to all parties the opportunity to present, by a full and fair record or transcript, questions exactly as they are presented and determined. In disposing of contested cases a judge should indicate the reasons for his or her action.

(12) A judge should not seek to be extreme, peculiar, spectacular or sensational in his or her judgment or in his or her conduct of the court. A judge should not compel persons brought before him or her to submit to discipline of his or her own devising without authority of law . . ..

With respect to Judge Breitenbach's having carried a loaded revolver into his courtroom and leaving it in a wastebasket near the bench, the judicial conduct panel concluded that such conduct did not constitute "gross personal misconduct," proscribed by SCR 60.13.[3] Rather, the panel concluded, it violated SCR 60.01(9) and 60.01(12).

The panel concluded that, taken together, Judge Breitenbach's conduct constituted an aggravated and persistent failure to comply with the enumerated standards and therefore was a wilful violation of the provi-

---

[3]SCR 60.13 provides:

**Misconduct.** A judge shall not indulge in gross personal misconduct.

114

sion of the Code of Judicial Ethics, SCR 60.17, which renders "an aggravated or persistent failure to comply with the standards of SCR 60.01 . . . a rule violation." Thus, it concluded, Judge Breitenbach engaged in judicial misconduct under sec. 757.81(4)(a), Stats., which defines "misconduct" to include a "wilful violation of a rule of the code of judicial ethics."

In making its recommendation for discipline, the panel noted the similarity between Judge Breitenbach's conduct and the judicial misconduct the court considered in *Disciplinary Proceedings Against Gorenstein,* 147 Wis. 2d 861, 434 N.W.2d 603 (1989). There, the court suspended the judge, who had retired from judicial office, from service as a judge in the courts of the state for two years.

We determine that the discipline recommended by the panel is appropriate here. Judge Breitenbach has demonstrated that he lacks the necessary judicial temperament to serve as a member of the judiciary. His treatment of litigants and their counsel evinces a failure to understand or accept the duty of a judge to afford every person fair and impartial treatment. As we said in *Gorenstein,* "That understanding is so fundamental to a judge as to render its absence ground for serious discipline." *Id.,* 874.

IT IS ORDERED that Jerold W. Breitenbach is prohibited from exercising the powers and duties of a judge for two years, commencing August 1, 1991.

ORDER

On August 16, 1991 the Judicial Commission filed a notice of voluntary dismissal pursuant to sec. 805.04(1), Stats., and moved the court for an entry of an order

115

dismissing the judicial conduct panel. The voluntary dismissal notice was accompanied by a stipulation of the parties in which Judge Breitenbach admitted having engaged in some of the conduct alleged in the Judicial Commission's complaint and admitted that such conduct violated specified provisions of the Code of Judicial Ethics, SCR chapter 60. In the stipulation, Judge Breitenbach agreed not to exercise any of the powers or duties of a judge, whether in the circuit court or municipal court and including service as a reserve judge, for two years, commencing August 1, 1991. The parties contemplated enforcement of that agreement by stipulating that the Judicial Commission may refile the disciplinary complaint if Judge Breitenbach does not comply with his agreement to refrain from exercising the powers and duties of a judge for two years or his agreement not to make any public comment on the contents of the stipulation.

Because we determine that the rule of civil procedure pursuant to which it was filed is not applicable under the circumstances present here, the Judicial Commission's notice of voluntary dismissal does not dismiss this proceeding and we deny the motion to dismiss the panel.

■■■

The rules of civil procedure, which by statute are applicable to judicial disciplinary proceedings "insofar as practicable," sec. 757.85(7), Stats., permit a plaintiff to dismiss an action without order of the court by filing a stipulation of dismissal signed by all parties who have appeared in the action. Sec. 805.04(1), Stats. That procedural rule, if applicable to the instant proceeding, would permit the Judicial Commission and Judge Breitenbach to determine by agreement and themselves impose discipline they deem warranted by the judge's

116

admitted judicial misconduct. By voluntarily dismissing the judicial disciplinary proceeding on the basis of the judge's admission of judicial misconduct and an agreement between the judge and the Judicial Commission on action or forbearance by the judge that amounts to discipline for the admitted misconduct, the parties would in effect usurp this court's constitutional authority and responsibility for the imposition of judicial discipline: "Each justice or judge shall be subject to reprimand, censure, suspension, removal for cause or for disability, by the supreme court pursuant to procedures established by the legislature by law." Art. VII, sec. 11, Wis. Const.

Consequently, application of the voluntary dismissal rule, sec. 805.04(1), Stats., is not practicable in the instant proceeding. When judicial misconduct is admitted or established in the course of a proceeding, the complaint cannot be dismissed. The panel must make findings of fact and conclusions of law concerning the judge's misconduct and the panel must recommend discipline to be imposed for that misconduct. This court, not the parties, determines and imposes discipline on a judge.

Furthermore, voluntary dismissal of a judicial disciplinary proceeding by stipulation of the parties pursuant to sec. 805.04(1), Stats., is not appropriate even if the stipulation does not include a judge's admission of misconduct or an agreement amounting to discipline for judicial misconduct and even if the stipulation would not impinge on the court's authority to discipline judges. For example, if the Judicial Commission discovers after filing a complaint against a judge that the evidence on which it relied is untrustworthy or that the judge had a meritorious defense to the allegations of misconduct or

117

that the acts of misconduct do not rise to a level warranting discipline, a stipulation for voluntary dismissal may be appropriate but dismissal requires an order of the Supreme Court. The nature of the proceeding, this court's role in judicial discipline, and the interests of the judiciary and the public require that a judicial disciplinary proceeding be dismissed only upon order of this court and upon such terms and conditions as the court deems proper.*

It was for precisely these reasons that the court rejected a motion for voluntary dismissal in *Complaint Against Sterlinske,* 123 Wis. 2d 245, 365 N.W.2d 876 (1985). There, the Judicial Commission's motion for voluntary dismissal was accompanied by a stipulation in which Judge Sterlinske agreed to resign from the office of circuit judge and notify the director of state courts that he would not accept assignments as reserve judge. However, the stipulation was silent concerning the judge's conduct alleged in the Judicial Commission's complaint to constitute judicial misconduct.

Denying the motion for voluntary dismissal, we noted that, by agreeing to the dismissal in return for the judge's resignation, the parties were attempting to resolve the charges of judicial misconduct and that if the voluntary dismissal motion were granted, those serious charges against Judge Sterlinske would remain unresolved. In our unpublished order, dated January 16, 1985, Case No. 84-1608-J, we stated:

> The integrity of the Wisconsin judicial system requires that the members of its judiciary be held

---

*This procedure is consistent with the rule of civil procedure, sec. 805.04(2), Stats., that requires court order, upon terms and conditions the court deems proper, for dismissal of an action at the plaintiff's instance when sec. 805.04(1), Stats., does not apply.

accountable for their conduct. . . . The public is entitled to a resolution of the judicial misconduct charges filed by the Judicial Commission in this case so that the judicial system and the public which it serves may be protected from judges who may be unfit to hold office. It is equally important that judges against whom charges of misconduct are filed be exonerated if they are not guilty of misconduct.

We stated further that, because the parties had not stipulated on the issue of the judge's misconduct, it was necessary for the court to determine whether his conduct constituted judicial misconduct "in order to maintain public confidence in the judiciary and to create a greater awareness of proper judicial behavior on the part of the state's judges."

Thus, regardless whether the parties' stipulation includes the judge's admission of misconduct or the parties stipulate to some action or forbearance on the part of the judge as a disposition of the proceeding, if the Judicial Commission seeks to have a judicial disciplinary proceeding dismissed, it shall submit a motion for dismissal to the judicial conduct panel. The panel shall then make its recommendation on the motion to the Supreme Court.

By order of May 21, 1991, we remanded this matter to the judicial conduct panel for its recommendation for disposition on the basis of findings of fact and conclusions of law. That remand was in response to the panel's report recommending that the court accept a prior stipulation of the parties similar to the stipulation for voluntary dismissal. That report did not include findings of fact or conclusions of law and explicitly made no recommendation that the court accept the provision of the stipulation asking the court to dismiss the proceeding.

119

Following remand, the panel did not make findings of fact and conclusions of law, notwithstanding Judge Breitenbach's admission of judicial misconduct set forth in the prior stipulation and reiterated in the stipulation filed in support of the voluntary dismissal motion. Moreover, in its order of June 20, 1991, the panel concluded that it was unnecessary to make findings of fact, conclusions of law and a recommendation for discipline, based on the Judicial Commission's assertion that it could voluntarily dismiss its complaint by stipulation pursuant to sec. 805.04(1), Stats.

Thus, because the voluntary dismissal rule of sec. 805.04(1), Stats., is not applicable to this proceeding and because the statutory procedure governing judicial disciplinary proceedings requires a judicial conduct panel to make findings of fact, conclusions of law and a recommendation regarding appropriate discipline for misconduct, sec. 757.89, Stats., it is again necessary to remand this matter to the panel. As the stipulation for voluntary dismissal and the prior stipulation in which Judge Breitenbach has admitted misconduct are premised on the anticipated dismissal of the proceeding, either party has the opportunity to withdraw those stipulations. If they are not withdrawn, the panel's findings and conclusions may be based on the parties' stipulation; its recommendation for discipline may but need not be consistent with the parties' stipulation.

IT IS ORDERED that the motion to dismiss the panel is denied and the matter is remanded to the judicial conduct panel for findings of fact, conclusions of law and a recommendation concerning discipline or other disposition.

Dated at Madison, Wisconsin, this 22nd day of October, 1991.

120

BY THE COURT:

Cornelia G. Clark, Chief Deputy Clerk